# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:<br><br>CROSIER FATHERS AND BROTHERS PROVINCE, INC., a Minnesota non-profit corporation,<br><br>        Debtor. | Chapter 11<br><br>Case No. 17-41681 |
| In re:<br><br>CROSIER FATHERS OF ONAMIA, a Minnesota non-profit corporation,<br><br>        Debtor. | Case No. 17-41682 |
| In re:<br><br>THE CROSIER COMMUNITY OF PHOENIX, an Arizona non-profit corporation,<br><br>        Debtor. | Case No. 17-41683 |

**ORDER CONFIRMING JOINT PLAN OF REORGANIZATION**

These cases came before the court pursuant to the *Joint Plan of Reorganization* filed and dated March 23, 2018, proposed by the debtors and their committee of unsecured creditors. The court conducted the plan confirmation hearing on March 22, 2018.

Pursuant to the findings, conclusions and statements of the court on the record at the confirmation hearing, the entire record before the Court in these cases, and the *Order Approving Settlement Agreement, Release, and Policy Buyback, Including the Sale of Insurance Policies Free and Clear of Liens, Claims, Encumbrances, and Other Interests*, which is incorporated into this confirmation order by this reference as if set forth fully herein, the court further finds and concludes as follows:

NOTICE OF ELECTRONIC ENTRY AND FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *03/26/2018*
Lori Vosejpka, Clerk, by LH

1. The plan satisfies and complies with each of the provisions of 11 U.S.C. § 1129 to the extent applicable to the plan and these cases.

2. Every class that voted, all of which are impaired, voted unanimously to accept the plan. A vast majority of the tort claimants—sixty-six (66) of sixty-nine (69)—voted, and all voted in favor of the plan.

3. These cases present the rare and unique circumstances in which the channeling injunctions, supplemental injunctions, and releases provided pursuant to the plan and the Hartford Agreement may be approved. The debtors have numerous and significant liabilities on which Hartford is also liable to some extent. Under the plan, Hartford will make a substantial contribution, as will the debtors, to provide for payment of the tort claimants. Such contributions are critical and significant contributions to the effective implementation of the plan, and the plan would not be feasible without such contributions. The debtors and Protected Parties (as defined in the plan) would not release their interests under the Hartford Policies (as defined in the plan) unless they obtained the benefits of the releases and injunctions under the plan. Resolution of these cases would not have been possible without such releases and injunctions, and the Protected Parties would not have made contributions to the plan without the protections, releases, and injunctions provided in the plan and the Hartford Agreement.

4. The creditors most affected by the releases and injunctions—the tort claimants—have indicated by an overwhelming majority that they accept such provisions; indeed, the committee is a proponent of the plan. The debtors provided specific and adequate notice notice of, among other things: (i) the releases and injunctions provided for in the plan and the Hartford Agreement, (ii) the manner in which a creditor or interested party could take steps to obtain additional information regarding, or object to such, releases or injunctions, and (iii) the names of Hartford and the Protected Parties. The debtors published and mailed such notice broadly. Although two objections to an earlier plan were filed by parties who are alleged to have been at fault with the debtors for the tort claimants' injuries, those objections were withdrawn at the confirmation hearing.

5. The court has jurisdiction pursuant to 28 U.S.C. § 1334(a) and (b) and 11 U.S.C. § 105, to approve the exculpation, release, and limitation of liability provisions of the plan and the Plan Documents (as defined in the plan) to issue the Channeling Injunction and other injunctions, as provided in Article 26 of the plan.

6. The *Unknown Claims Representative's Report and Recommendations* 17-41681, has been considered by the court and is accepted. The unknown claims representative is qualified to make the analysis and conclusions set forth in the report as a result of his background and experience. The report is comprehensive, and the unknown claims representative has acted diligently in examining the potential for Unknown Tort Claims (as defined in the plan) arising after the confirmation date. Accordingly, the findings and recommendations contained in the report are adopted by the court and incorporated herein.

**IT IS ORDERED:**

A. <u>Confirmation</u>. The plan dated and filed March 23, 2018 is confirmed. All formal and informal objections, responses, statements, and comments in opposition to the plan, other than those withdrawn with prejudice in their entirety or resolved on the record during the confirmation hearing, are overruled on the merits.

B. <u>Deadline for Filing Administrative Claims</u>. All professionals requesting compensation or reimbursement of expenses under 11 U.S.C. §§ 327, 328, 330, 331, 503(b) and 1103 for services rendered prior to the Effective Date, and all other requests to order payment of an administrative claim, must be made by motion in accordance with Local Rules 2016-1 and 3002-2 and shall be filed and served no later than thirty days after the date of this order.

C. <u>Objections to Non-Tort Claims</u>. All objections to proofs of claim filed by creditors whose claims are not Tort Claims shall be made by motion under Local Rule 3007-1, and shall be served and filed within 60 days after the date of this order.

D. <u>Other Proceedings</u>. All other motions, applications or complaints shall be filed within 60 days after the date of this order unless the plan expressly provides otherwise. Any time limit provided in this order may be extended or waived by the court for cause after notice and a

hearing. Nothing in this order shall preclude any proceeding in another court with jurisdiction and within time limits otherwise applicable.

  E. <u>Binding Effect of Plan</u>.  Immediately upon the entry of this order, the terms of the plan, and the Plan Documents are approved, effective and binding, including without limitation upon any and all entities acquiring property under the plan, any and all holders of claims and interests, any and all non-debtor parties to executory contracts, any and all Tort Claimants, Unknown Tort Claimants, and other creditors, whether or not such creditor has filed a proof of claim in the reorganization cases, whether or not the claim of such creditor is impaired under the Plan, and whether or not such creditor has accepted or rejected the plan.  All entities shall act or refrain from acting as set forth in the plan.

  F. <u>Vesting of Estates' Assets</u>.  Except as otherwise provided herein or in the plan, and as of the Effective Date of the plan, under 11 U.S.C. §§ 1141(b) and 1141(c), all property of the debtors' estates and all property dealt with by the plan is vested in the Trust or the reorganized debtors, or as may be otherwise set forth in the plan, free and clear of all liens, interests and claims of creditors of the debtors.  On January 11, 2018, the court approved the sale of certain real property owned by debtor The Crosier Community of Phoenix.  The order, entered at docket number 104 in the Phoenix debtor's case, required the sale proceeds to be held in a segregated account pending further order of this Court.  On or after the Effective Date of the plan, such funds shall be released to the reorganized debtors.

  G. <u>Discharge</u>.  Except as otherwise expressly provided in the plan or in this order, on the Effective Date, the debtors are discharged from and their liability is extinguished completely in respect of any claim and debt, whether reduced to judgment or not, liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or future, that arose from any agreement of the debtors entered into or obligation of the debtors incurred before the Confirmation Date, or from any conduct of the debtors prior to the Confirmation Date, or that otherwise arose before the Confirmation Date, including, without limitation, all interest, if any, on any such claims and

4

QB\51108524.2

debts, whether such interest accrued before or after the petition date, and including all claims and debts of the kind specified in 11 U.S.C. §§ 502(g), 502(h), and 502(i), whether or not a proof of claim is filed or is deemed filed under 11 U.S.C. § 501, such claim is allowed under 11 U.S.C. § 502, or the holder of such claim has accepted the plan.

H. **Exculpation and Limitation of Liability. Except as expressly provided in the plan, none of the Protected Parties will have or incur any liability to, or be subject to any right of action by, any claimant, any other party in interest, or any of their respective Representatives, financial advisors, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the reorganization cases, including the exercise of their respective business judgment and the performance of their respective fiduciary obligations, the pursuit of confirmation of the plan, or the administration of the plan or the property to be distributed under the plan or the Trust created hereunder, except for their willful misconduct or gross negligence and in all respects such parties will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the plan or the reorganization cases. Without limiting the generality of the foregoing, the debtors and their financial advisors and other professionals shall be entitled to and granted the benefits of 11 U.S.C. § 1125(e). The Protected Parties, the Trust, the Trustee, and professionals employed by the foregoing shall not have any liability to any entity, including any governmental entity or insurer, on account of payments made to a Tort Claimant, including any liability under the MSPA.**

I. **Channeling Injunction. In consideration of the undertakings of the Protected Parties under the plan, the Hartford Agreement, and other consideration, and to further preserve and promote the agreements between and among the Participating Parties, Hartford, and the debtors which also benefit the Tort Claimants and Unknown Tort Claimants and the protections afforded the Protected Parties under the Bankruptcy Code, including 11 U.S.C. § 105:**

    i. **Any and all Channeled Claims are channeled into the Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts as established under the plan, the Allocation Protocols and the Trust Documents (as each are defined in the plan) as the sole and exclusive remedy for all holders of Channeled Claims; and**

    ii. **All entities who have held or asserted, hold or assert, or may in the future hold or assert, any Channeled Claim are hereby permanently stayed, enjoined, barred and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim, including:**

        a. **Commencing or continuing in any manner any action or other proceeding of any kind with respect to any claim, including but not limited to, any Tort Claim, any Unknown Tort Claim, or any Channeled Claim against the Protected Parties or the property of the Protected Parties;**

        b. **Asserting a claim against any person if as a result of such claim such person has or may have a claim against one or more of the Protected Parties;**

        c. **Seeking the enforcement, attachment, collection, or recovery, by any manner or means, from any of the Protected Parties, or from**

>   the property of any of the Protected Parties, with respect to any such Channeled Claim, of any judgment, award, decree, or order against any of the Protected Parties;
>
> d. Creating, perfecting or enforcing any lien of any kind against any Protected Parties, or the property of any of the Protected Parties with respect to any discharged claim or Channeled Claim;
>
> e. Asserting, implementing or effectuating any Channeled Claim of any kind against:
>
>   (1) Any obligation due any of the Protected Parties;
>
>   (2) Any Protected Party; or
>
>   (3) The property of any Protected Party;
>
> f. Asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due any of the Protected Parties or the property of any of the Protected Parties with respect to any discharged claim or Channeled Claim; and
>
> g. Taking any act, in any manner, in any place whatsoever that does not conform to, or comply with, the provisions of the Plan or the Plan Documents, including the Trust Agreement.

J. **Supplemental Injunction Preventing Prosecution of Claims against Hartford.** Pursuant to 11 U.S.C. §§ 105(a) and 363 and in consideration of the undertakings of Hartford pursuant to the Hartford Agreement, including Hartford's purchases of the Hartford Policies free and clear of all interests pursuant to 11 U.S.C. §§ 363(f) and 1123, any and all entities who have held, now hold or who may in the future hold any interests (including all debt holders, all equity holders, all Entities holding a claim, governmental, tax and regulatory authorities, lenders, trade and other creditors, Tort Claimants, Unknown Tort Claimants, perpetrators, and all others holding interests of any kind or

7

**nature whatsoever, including those claims released or to be released pursuant to the Hartford Agreement) against any of the Protected Parties, which, directly or indirectly, relate to, any of the Hartford Policies, any Tort Claims or any Unknown Tort Claims, are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such interest against Hartford, the Hartford Parties (as defined in the plan), the Crosier Fathers Parties (as defined in the plan), and/or the Hartford Policies, except as set forth in the Hartford Agreement, including:**

      i.      **Commencing or continuing in any manner any action or other proceeding, whether legal, equitable or otherwise against Hartford, the Hartford Parties, the Crosier Fathers Parties or the property of Hartford or the Crosier Fathers Parties;**

      ii.      **Enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, award, decree or order against Hartford, the Hartford Parties, the Crosier Fathers Parties or the property of Hartford, the Hartford Parties, or the Crosier Father Parties;**

      iii.      **Creating, perfecting, or enforcing any lien of any kind against Hartford, the Hartford Parties, or the Crosier Fathers Parties;**

      iv.      **Asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due to Hartford, the Hartford Parties, or the Crosier Fathers Parties; and**

      v.      **Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the plan.**

      K.      **<u>Effectiveness of Releases and Injunctions</u>.   Except as otherwise expressly provided in the plan, for the consideration described therein, all entities who have held, hold, or may hold Channeled Claims or claims against the Protected Parties, whether known or unknown, and their respective civil law and Canon Law officers, directors,**

**officials, Representatives, council members, employees, accountants, agents, attorneys, and all others acting for or on their behalf, will be permanently enjoined on and after the Effective Date from: (i) commencing or continuing in any manner any action or any other proceeding of any kind with respect to any claim, including, but not limited to, any Tort Claim, any Unknown Tort Claim, or any Channeled Claim against the Protected Parties or the property of the Protected Parties; (ii) asserting a claim against any person if as a result of such claim such person has or may have a claim against one or more of the Protected Parties; (iii) seeking the enforcement, attachment, collection, or recovery by any manner or means, from any of the Protected Parties, or from property of any of the Protected Parties, with respect to any such Channeled Claim, of any judgment, award, decree, or order against any of the Protected Parties; (iv) creating, perfecting, or enforcing any lien of any kind against the Protected Parties with respect to any discharged claim or Channeled Claim; (v) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Parties with respect to any discharged Claim or Channeled Claim; and (vi) taking any act, in any manner and in any place whatsoever, that does not conform to or comply with provisions of the plan or the Plan Documents, including the Trust Agreement. Any and all currently pending court proceedings, the continuation of which would violate the provisions of this section, shall be dismissed with prejudice.**

**L.      Injunctions Are Permanent; Existing Injunctions and Stays Remain in Effect until Effective Date. On the Effective Date, the injunctions provided for in the plan shall be deemed issued, entered, valid and enforceable according to their terms and shall be permanent and irrevocable. All injunctions and/or stays provided for in the plan, the injunctive provisions of 11 U.S.C. §§ 524 and 1141, and all injunctions or stays protecting Hartford that has purchased the Hartford Policies in a 11 U.S.C. § 363 sale, are permanent and will remain in full force and effect following the Effective Date and are not subject to being vacated or modified.**

9

M. <u>Liability of Joint Tortfeasors</u>.  Pursuant to Sections 13.5 and 14.5 of the Plan, any Person or Entity that is or was alleged to be a joint tortfeasor with the Debtors or the Crosier Fathers Parties in connection with any Tort Claim or Unknown Tort Claim shall not be liable for the Debtors' or Crosier Fathers Parties' share of liability or fault for such Claim.

N. <u>Mailing of Notice</u>.  The debtors shall forthwith mail copies of this order as notice of entry of this order and confirmation of the Plan to the entities specified in Local Rules 9013-3 and to all creditors and other parties in interest.

Dated: *March 26, 2018*

                                                     /e/ Robert J. Kressel
                                                ROBERT J. KRESSEL
                                                UNITED STATES BANKRUPTCY JUDGE